

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**

ATTORNEY GENERAL

Honorable Bert Ford, Administrator
Texas Liquor Control Board
Austin 1, Texas

Dear Sir:

Opinion No. 0-5827
Re: Whether Texas anti-trust
statutes prohibit agree-
ments to suppress the so-
called black market oper-
ations, and related ques-
tions.

The war-time necessity for emergency maximum prices, rationing and other Federal and State regulations designed to stabilize the national economy, has created among certain elements of the people a concerted or organized series of illegal evasions commonly referred to as the "black market." Efforts to curb and finally stamp out these unfair, injurious, unlawful and unpatriotic practices are being made by the joint efforts of Federal, State and patriotic agencies.

It is erroneously assumed in some quarters that certain Texas statutes operate as a bar to Texas participation in that nation-wide program of extermination of these law violators. Particular concern is expressed over the provisions of Article 7428, reading as follows:

"Either or any of the following acts shall constitute a conspiracy in restraint of trade.

"1. Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise, produce or any commodity enter into an agreement or understanding to refuse to buy from or sell to any person, firm, corporation or association of persons, any article of merchandise, produce or commodity.

Honorable Bert Ford, page 2

"2. Where any two or more persons, firms, corporations or associations of persons, shall agree to boycott or threaten to refuse to buy from or sell to any person, firm, corporation or association of persons for buying from or selling to any other person, firm, corporation or association of persons."

With this Texas statute in mind you submit a proposed agreement between a distiller and a Texas wholesale liquor dealer:

## "W I T N E S S E T H:

"Second party is a distributor of first party's product in _____, and in an effort to preserve the integrity of the distilling industry and to conform to the requirements of the United States Government to assist in the suppression of which is commonly known as a 'Black Market' in the distribution of whiskey it is agreed between the parties as follows:

"1. Second party shall market first party's merchandise only in conformity with the Internal Revenue and Federal Statutes and Regulations.

"2. Second party agrees not to sell any other distributor unless such distributor holds a basic F.A.A. permit.

"3. Second party agrees that upon receipt of written notice from the Alcohol Tax Unit of the Internal Revenue Service of the Treasury Department of the United States Government to the effect that:

"a. Revocation or suspension proceedings under the Federal Alcohol Administration Act have been instituted against the basic permit held by any of its customers engages in the liquor business, or

Honorable Bert Ford, page 3

"b. That criminal proceedings have been instituted against any of its customers for a violation of Federal laws and regulations second party will cease to supply such customer with the merchandise of first party.

"4. In the event second party violates any one or more of the provisions of this agreement first party may immediately, without incurring any legal or other responsibility therefor, cease selling or delivering its merchandise to second party and may, pending final determination of such matter, use its own judgment with reference to the further distribution of its product within the territory theretofore served by second party.

"5. This supplemental agreement is not intended to and does not enlarge or expand any existing agreement between the parties hereto; does not confer upon second party any exclusive or nonterminable right to sell first party's product in the area in question or otherwise and it is simply designed to modify whatever agreement may have existed between the parties hereto with reference to their contractual relation only to the extent of the suggestions put forth by the United States Government in its desire to accomplish the purpose set forth hereinabove."

A careful analysis of the agreement justifies your statement, that of the Federal officials and that of the distiller that the proposal "originates from a desire to suppress the Black Market evil in the whiskey business." Briefly summarized, the Texas wholesaler agrees he will obey certain Federal regulations and that he will not sell liquor to retailers in Texas who are not authorized by Federal law to purchase the same; that the distiller will not sell to wholesalers found by the Federal Alcohol Tax Unit to be law violators, where notice thereof is given and where suspension and criminal proceedings have been instituted; that should the wholesaler violate the law as set forth in the agreement the distiller shall have the privilege of cancelling any existing

Honorable Bert Ford, page 4

distributing arrangement and make a new one with some other wholesaler.

Thus understood the proposed distiller-wholesaler agreement is essentially one to abide by the laws of the United States and of Texas. If there is any conflict between Article 7428 and the proposed agreement, the agreement would nevertheless be valid because it is nothing more than a re-statement of obligation to obey the supreme law of the land. This department ruled such a proposal valid in Opinions Nos. O-5259 and O-5611, copies of which are enclosed. See authorities there cited.

We fail to see any provision of the agreement that would in anywise relax the provisions of Section 17(11), Article I, Texas Liquor Control Act, prohibiting consignment sales.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED APR 13, 1944

G. J. Blackburn

ATTORNEY GENERAL OF TEXAS

By _____

Elbert Hooper
Assistant

EH:db

Enclosures


APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN